IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GEORGE W. ALLEN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-00001-NKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff George W. Allen, Jr.'s ("Allen") Social Security Complaint [Doc. # 5]. Allen seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of his request for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*. The Administrative Law Judge ("ALJ") found that Allen was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied Allen's request for review. Allen has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Because the Court concludes that the ALJ failed to adequately consider all relevant evidence in determining Allen's residual functional capacity, this matter is remanded to the Commissioner for further consideration.

**I.    Background**

1

### A. Factual and Procedural History[1]

Born on April 8, 1957, Allen, who has an eleventh-grade education, had been employed as a cook, warehouse laborer, and construction worker. [Tr. 80]. Allen filed an application for disability insurance and supplemental security income benefits on March 11, 2005, claiming he became disabled on February 28, 2005, due to "loss of left eye, hbp, sugar, one lung." [Tr. 69, 71-72]. On August 14, 2007, following an evidentiary hearing [Tr. 273-309], the ALJ issued a written decision denying disability benefits to Allen because he was not under a "disability" as defined in the Act. [Tr. 18]. After the Appeals Council denied Allen's request for additional administrative review of the ALJ's decision, Allen sought review by the Court.

Allen is a Type II diabetic who has hypertension. [Tr. 154-55, 157, 279]. After reviewing Allen's records, a medical expert testified that both diseases are well controlled with medication and diet. [Tr. 295-96]. Allen lost vision in his left eye in 1996 due to reasons unrelated to diabetes. [Tr. 290]. Allen testified that he was told by a physician that his right eye lacked peripheral vision. [Tr. 293]. A medical expert agreed that Allen's medical records seemed to indicate a field of vision with limitations in peripheral vision. [Tr. 302]. Allen testified that he is able to watch television [Tr. 284] but "can't read the titles." [Tr. 291]. He says he can read with a magnifying glass and glasses. [Tr. 291].

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Allen testified that he falls asleep frequently during the day, even during conversations with friends. [Tr. 291]. In response, the medical expert testified that "[t]here is no record of that in the chart." [Tr. 297]. However, the record shows that Allen has complained of "daytime hypersomnolence," which was "confirmed by family." [Tr. 145, 161, 164]. In late 2004, he underwent an overnight polysomnography. Test results showed that Allen's REM sleep latency was 6.5 minutes, whereas "REM latency is normally 70-90 minutes after sleep onset." [Tr. 146]. According to Amy Meoli, M.D., who had conducted the study, these results "could be suggestive of narcolepsy." [Tr. 146].

Additional findings from the polysomnography were "consistent with severe obstructive sleep apnea." [Tr. 146]. A physician who followed-up with Allen also found severe obstructive sleep apnea and had prescribed use of a CPAP/BiPAP machine with varying levels of water to address his symptoms of "waking, gasping, and choking" during the night. [Tr. 145, 146, 167]. Allen testified that he used a positive airway pressure machine "every night" for the past three years, though he would wake up "gagging" after two to three hours of sleep. [Tr. 286].

Allen has also sought treatment for knee and back pain, and dry, cracked heels. [Tr. 156]. Allen had undergone back surgery after a car accident in 1999 [Tr. 280], however, his medical records indicate that his symptoms are linked to his weight. [Tr. 254 ("back pain controlled, weight loss has helped back & knees")]. Allen testified that he is 5'9" tall and weighed 260 pounds [Tr. 274]; doctors have assessed him as obese

3

since at least 2004. [Tr. 161, 165]. Taking into account his weight as well as past treatment with anti-steroidal anti-inflammatory medication, the testifying medical expert attributed Allen's knee and back pain to possible early osteoarthritis. [Tr. 296]. Physicians have repeatedly recommended that Allen exercise. [Tr. 249, 259, 261, 263]. To help control his weight, Allen reported in March 2007 that he bought a treadmill. [Tr. 250]. One of Allen's treating physicians noted that he "is quite dedicated to diet/exercise." [Tr. 251]. At the hearing, Allen additionally testified that he has had difficulties with both of his hands for the last three years due to a "tingling sensation in the tip of [his] fingers and on [his] fingers." [Tr. 278-79]. However, the medical expert found no mention of this problem in Allen's medical history, nor did he find any evidence of diabetic neuropathy. [Tr. 297].

The medical expert acknowledged that one of Allen's doctors indicated that he might also have had gastro esophageal reflux, but Allen's records did not show a listing of consistent medications or further reference to the tentative diagnosis. [Tr. 295-96]. Further, the medical expert acknowledged that Allen had complained of dizzy spells after being hit on the head, but that there was no evidence of any brain damage or long-term effects. [Tr. 298]. Other complaints of dizziness were temporary. [Tr. 298]. In 2005, Allen had a left lung upper lobe nodule removed, with no malignancy found. [Tr. 115].

Since 2002, Allen has cared for his bedfast mother and has been compensated by the State since 2003 for doing so. [Tr. 114, 276-78]. He reported that he helps to prepare

4

meals [Tr. 88, 282] and shops [Tr. 91]. The record does not indicate that he has fully quit smoking despite recommendations to do so by his physicians. [Tr. 249, 259, 261, 263].

B.   The ALJ's Decision

To establish his entitlement to benefits, Allen must have shown that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Allen was not under a "disability" unless his impairment was so severe that he was unable to do his previous work or–considering his age, education, and work experience–any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Allen did not meet this burden at any time from February 28, 2005, his onset date, to August 14, 2007, the date of the ALJ's decision.

The ALJ found that Allen had several severe impairments: obesity, obstructive sleep apnea, loss of vision of the left eye with restricted peripheral vision in the right eye, complaints of knee and low back pain potentially due to early osteoarthritis, and well-controlled essential hypertension and Type II diabetes. [Tr. 14]. *See* 20 C.F.R. 404.1520(c) and 416.920(c). However, the ALJ determined that Allen did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1 (2008). The ALJ further found that Allen retained the residual functional capacity ("RFC") to perform a range of light work that requires no

more than lifting twenty pounds or bending on an occasional basis, standing four hours at a time, and walking two to four hours. Additionally, he found that Allen had restricted peripheral view with his right eye, but had no other significant restrictions. Specifically, the ALJ noted that Allen was not limited in his ability to sit, climb, or grip. [Tr. 15]. Although the ALJ found that Allen could not perform past relevant work because they all involved at least medium exertion, he did find that Allen could perform unskilled, light exertion work such as folding machine operator, photocopy operator, and bench assembler. "Thousands" of such jobs exist in the local and national economies. [Tr. 18, 306-07].

Allen raises two arguments on appeal. He asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to properly consider all the credible evidence of record in determining Allen's residual functional capacity ("RFC"), and 2) failed to properly find that Allen could perform work, consistent with Allen's correct RFC, that exists in a significant number of positions in the national economy. [Doc. # 14, at 14-20]. In support, Allen primarily alleges that the ALJ failed to properly consider the severity of his mental impairments, which limit his RFC and available opportunities for gainful employment.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that

a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### A. Determination of Allen's Residual Functional Capacity

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Allen specifically argues that the ALJ erred by failing to include his mental and non-exertional impairments and resulting functional limitations in assessing Allen's RFC. [Doc. # 14, at 18-20]. However, he does not point to what non-exertional impairments the ALJ failed to consider. Further, Allen did not allege any mental impairments in his application for benefits, did not testify to such impairments, and his medical records lack any complaints of mental issues.

However, Allen also generally claims that the ALJ failed to properly consider all the credible evidence of record to determine his RFC. The Court notes that the ALJ's formal RFC findings did not include Allen's loss of vision in his left eye. [Tr. 15]. But, the ALJ included Allen's vision loss as a severe impairment [Tr. 14], and also asked the

7

vocational expert to identify jobs that Allen could perform, given the loss of vision in his left eye and limited vision in his right eye. [Tr. 305-07]. Thus, the failure to include Allen's loss of vision in his left eye in the formal RFC findings is not fatal to the ALJ's decision. On the other hand, to the extent Allen's claim regards his complaint of "falling asleep during the day," the Court finds that the ALJ: 1) improperly discounted Allen's testimony, and 2) did not consider all relevant evidence regarding Allen's allegations of daytime hypersomnolence or narcolepsy and how they affect his ability to function.

Allen's records indicate that he underwent a sleep study in December 2004 after complaining to a physician of "hypersomnolence" in February and August 2004. [Tr. 161, 164]. Dr. Meoli, who conducted the study, noted that the study's results, particularly Allen's 6.5-minute REM sleep latency, were potentially "suggestive of narcolepsy." [Tr. 146]. Despite this evidence, the ALJ discounted Allen's testimony because he found "the medical expert testimony and opinions to be consistent with the record" and "the medical expert testified that the record did not support or corroborate these allegations. The medical expert found no basis in the record for such complaints." [Tr. 16]. Yet, these statements by the medical expert are an inaccurate assessment of Allen's medical record because there exist records of Allen's complaints and supportive diagnostic data. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Juszczuk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (citing *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003)). Here, however, the ALJ's reason for discounting Allen's testimony is not supported by

substantial evidence in the record because it was based on an inaccurate characterization of Allen's medical history.

As to the results of Allen's sleep study, while "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered," it is error for an ALJ to fail to discuss a treating physician's opinion when the record contains no contradictory medical opinion. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citing *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990)). Here, the ALJ did not refer to Dr. Meoli's study in his written decision. Further, given the ALJ's reliance on the inaccurate characterization of the record by the medical expert, it is unclear whether the ALJ in fact considered the results of Allen's sleep study. The ALJ fails to point to any alternative medical evidence that contradicts the sleep study's diagnostic data.

However, the ALJ arguably referred to non-medical evidence in the record that conflicts with Dr. Meoli's conclusions. First, the ALJ referred to Allen's "essentially normal" January 2005 pulmonary function study in his decision. [Tr. 16]. However, that was to explain his assessment of Allen's sleep apnea, not complaints of daytime hypersomnolence. Second, the ALJ commented that Allen "continues to engage in a range of activities" and has not yet fully complied with physicians' recommendations that he quit smoking and lose weight. [Tr. 16]. Yet, this bears on the weight the ALJ affords a treating physician's opinion, *see Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010), not that Dr. Meoli's medical opinion need not be considered or discussed.

Ultimately, as the Commissioner's brief states, "the ALJ relied, in large part, on [the medical expert]'s testimony at the hearing" to support his RFC findings. [Doc. # 18, at 9]. As the ALJ's decision to disregard Allen's allegations of daytime hypersomnolence was not based on substantial evidence, the Court finds that Allen's RFC was improperly determined.

### B. Allen's Ability to Engage in Substantial Gainful Activity

"Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *McKinney v. Apfel*, 228 F.3d 860 (8th Cir. 2000) (quoting *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). At the hearing, the vocational expert testified as to Allen's opportunities to engage in substantial gainful activity based on Allen's improperly determined RFC. Thus, it is unclear whether there exists work in a significant number of positions in the national economy for an individual with Allen's properly determined residual functional capacity.

## III. Conclusion

Because the ALJ did not properly determine Allen's RFC, the decision of the Commissioner is reversed and the matter is remanded for a new administrative hearing where a proper RFC is to be determined upon reconsideration of the relevant evidence, consistent with this Court's order.

Accordingly, it is hereby ORDERED that the decision of the Commissioner is REVERSED and the case is REMANDED with instructions.

      s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 9, 2010
Kansas City, Missouri